## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JOANN MARIE W.,[1]                          )
                                            )
              Plaintiff,                    )
                                            )        **CIVIL ACTION**
v.                                          )
                                            )        **No. 20-1031-JWL**
ANDREW M. SAUL,                             )
**Commissioner of Social Security,**        )
                                            )
              Defendant.                    )
_____)

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security

denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI)

benefits pursuant to sections 216(i), 223, 1602, and 1614 of the Social Security Act, 42

U.S.C. §§ 416(i), 423, 1381a, and 1382c (hereinafter the Act).  Finding no error in the

Administrative Law Judge's (ALJ) determination Plaintiff's mental impairments are not

severe and do not require mental limitations, the court ORDERS that judgment shall be

entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the

Commissioner's final decision.

**I.      Background**

_____

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the
interest of protecting the privacy interests of Social Security disability claimants, it has
determined to caption such opinions using only the initial of the plaintiff's last name.

Plaintiff protectively filed applications for DIB and SSI benefits on March 20, 2017. (R. 10). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ erroneously failed properly to evaluate her mental impairments as severe, or to include mental limitations in the residual functional capacity (RFC) assessed.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala,

36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record,

nor try the issues de novo, nor substitute [the Court's] judgment for the

[Commissioner's], even if the evidence preponderates against the [Commissioner's]

decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless,

the determination whether substantial evidence supports the Commissioner's decision is

not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v.

Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

 The Commissioner uses the familiar five-step sequential process to evaluate a

claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136,

1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).

"If a determination can be made at any of the steps that a claimant is or is not disabled,

evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting

Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether

claimant has engaged in substantial gainful activity since the alleged onset, whether she

has a severe impairment(s), and whether the severity of her impairment(s) meets or

equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404,

Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the

Commissioner assesses claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  This

assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

## II.    Discussion

Plaintiff argues, "While the record supports a finding that [Plaintiff]'s mental impairments are severe at step two, the ALJ's error is at step four when assessing the RFC."  (Pl. Br. 11).  She points out that in his step two evaluation, the ALJ found no more than mild limitations in each of the four broad areas of mental functioning but argues "he failed to then explain [sic] how he considered the mental impairments in the RFC assessment."  (Pl. Br. 12).  She argues the nearest explanation in the ALJ's RFC evaluation was his finding "the cumulative evidence does not establish a reasonable basis for the extreme limitations the claimant alleged with regard to her activities of daily living," and suggests he simply disregarded Plaintiff's mental impairments in his RFC assessment.  Id. (quoting R. 19, and citing Stookey v. Colvin, No. 13-2172-SAC, 2014

WL 3611666, at *3-4 (D. Kan. July 22, 2014)).  She argues, "The step two analysis may be sufficient to explain the reasons for omitting mental limitations in the RFC as long as the step two analysis is supported by substantial evidence, but that is not the case here" because the ALJ weighed the four medical opinions addressing Plaintiff's mental impairments in his RFC assessment between step three and step four of the sequential evaluation process[2] rather than in his step two discussion.  (Pl. Br. 13).

Plaintiff also argues the ALJ erred in weighing the medical opinions.  She argues the reasons given to reject the opinion of the nurse-practitioner who treated her "failed to point to inconsistencies in the record to give no weight to Nurse Russell's opinion," and suggests that in doing so the ALJ based his rejection on speculative inferences rather than contradictory medical evidence.  Id. at 14 (citing McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002)).  She argues the ALJ's finding of intermittent abnormalities to discount Ms. Russell's opinion of serious work-preclusive limitations misunderstands the nature of Plaintiff's mental impairments and the record reveals a waxing and waning of symptoms.  Id. at 15.  She argues that the record evidence does, in fact, support Ms. Russell's opinion.  Id. at 15-16.

---

[2] Plaintiff argues "the ALJ assessed those opinions at step four in the RFC assessment" (Pl. Br. 13), but the ALJ's evaluation of the opinions appears at (R. 20-21) within his RFC assessment at (R. 16-22), and between his step three evaluation and step four evaluation.  His step two evaluation appears at (R. 13-15), step three evaluation at (R. 15-16), and his step four evaluation at (R. 22-23).  This arrangement is consistent with the regulations' requirement that RFC be assessed "When your impairment(s) does not meet or equal a listed impairment" (step three) and used "at the fourth step of the sequential evaluation process … and at the fifth step of the sequential evaluation process."  20 C.F.R. §§ 404.1520(e), 416.920(e); 404.1545(a)(5), 416.945(a)(5).

Plaintiff further argues the ALJ erred in according significant weight to the opinions of the state agency psychological consultants, Dr. Isenberg and Dr. Rosenshield, and partial weight to the opinion of Dr. Mintz who examined Plaintiff and prepared a report of that examination.  (Pl. Br. 16).  She argues these opinions are not substantial evidence to support the ALJ's finding no mental limitations.  Id. (citing Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); and Wickliffe v. Berryhill, Case No. 16-2556-SAC, 2017 WL 3149354 (D. Kan. July 25, 2017); and suggesting a non-treating source opinion must be given more weight than a non-examining source opinion which must be given the least weight of all; and, by implication, a treating provider's opinion must be given the greatest weight).  She argues it was error to rely on these opinions "because they were based on limited and outdated evidence of record" and not on subsequent evidence which included additional treatment, Ms. Russell's opinion, and Plaintiff's beginning mental health treatment.  Id. at 17.  She argues Dr. Mintz "did not appear to review any medical records," id., and in her Reply Brief argues his examination was done "without review of medical records."  (Reply 2).

Finally, Plaintiff argues the record reveals worsening of her physical and mental impairments and the "ALJ failed to adequately consider [sic] the combined effects of all of [Plaintiff]'s medically determinable impairments."  (Pl. Br. 17).  She cites record evidence which, in her view, demonstrates her mental impairments worsened as her physical impairments worsened and that she "did have some limitations in mental functioning in a work setting."  Id. at 18-19.

The Commissioner argues the ALJ reasonably found Plaintiff's mental impairments are not severe in accordance with 20 C.F.R. §§ 404.1520a(d)(1), and 416.920a(d)(1).  (Comm'r Br. 5-6).  He argues the ALJ's finding—the evidence did not support finding mental limitations—is reasonable and supported by the evidence.  Id. at 7.  He argues Plaintiff cannot show the ALJ's reasoning is flawed and that the reasons given to discount Ms. Russell's and Dr. Mintz's opinions are adequate.  Id.

The Commissioner argues the reasons given to reject Ms. Russell's opinion are valid and supported by the record, and that Plaintiff's argument essentially asks the court to reweigh the evidence.  Id. at 7-8.  He argues the reasons given to accord greater weight to Dr. Mintz's opinion and even greater weight to the state agency psychologists' opinions are valid and supported by the evidence, id. at 8, and that the opinions are not stale because the ALJ justifiably found the subsequent "evidence was mostly cumulative, and did not show an appreciable worsening of Plaintiff's condition."  Id. at 9.

Finally, the Commissioner argues the ALJ explained his bases for discounting Dr. Mintz's opinion—which are valid and supported by the record.  Id.  He argues, alternatively, that had the ALJ accepted Dr. Mintz's opinion the result would be the same as reached here because the vocational expert testified in response to a hypothetical including Dr. Mintz's mental limitations that the plaintiff would be able to perform the same representative jobs that the ALJ relied upon in deciding this case.  Id. at 10.

Plaintiff argues in her Reply Brief that the evidence—including Ms. Russell's opinion, that Plaintiff began mental health treatment, and the fact her mental impairments are closely intertwined with her physical impairments—shows appreciable worsening in

her condition after the opinions of Dr. Mintz and the state agency psychologists were formed.  (Reply 2-3).

### A.      Legal Standards Applicable

An impairment is not considered severe if it does not significantly limit Plaintiff's ability to do basic work activities such as understanding simple instructions, responding appropriately to usual work situations, and dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1522, 416.922.  The Tenth Circuit has interpreted the regulations and determined that to establish a "severe" impairment or combination of impairments at step two of the sequential evaluation process, plaintiff must make only a "de minimis" showing.  Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).  Plaintiff need only show that an impairment would have more than a minimal effect on her ability to do basic work activities.  Williams, 844 F.2d at 751.  However, she must show more than the mere presence of a condition or ailment.  Hinkle, 132 F.3d at 1352 (citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987)).  If an impairment's medical severity is so slight that it could not interfere with or have a serious impact on plaintiff's ability to do basic work activities, it could not prevent plaintiff from engaging in substantial work activity and will not be considered severe.  Hinkle, 132 F.3d at 1352.

The Commissioner has promulgated a Psychiatric Review Technique for evaluating mental impairments.  20 C.F.R. §§ 404.1520a, 416.920a.  In evaluating the severity of mental impairments at steps two, the technique provides for rating the degree of functional limitation in each of four broad mental functional areas:  understand, remember, or apply information; interact with others; concentrate, persist, or maintain

pace; and adapt or manage oneself.  Id. §§ 404.1520a(c) 416.920a(c).  After rating the degree of limitation, the Commissioner determines the severity of plaintiff's mental impairments.  Id. §§ 404.1520a(d), 416.920a(d).  When the degree of limitation in each functional area is rated as "none" or "mild," the agency will conclude at step two of the sequential evaluation process that Plaintiff's mental impairments are not severe "unless the evidence otherwise indicates that there is more than a minimal limitation in [the plaintiff's] ability to do basic work activities."  Id. §§ 404.1520a(d)(1), 416.920a(d)(1).

In Brescia v. Astrue, 287 F. App'x 626, 628-629 (10th Cir. 2008), the court held that once an ALJ has found that Plaintiff has at least one severe impairment, a failure to designate another as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  Later, in Hill v. Astrue, 289 F. App'x. 289, 291-92, (10th Cir. 2008), the court held that the failure to find that additional impairments are also severe is not in itself cause for reversal so long as the ALJ, in determining the claimant's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'"

For claims filed before March 17, 2017, "[m]edical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis, what [claimant] can do despite impairment(s), and [claimant's] physical or mental restrictions."  20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1).  Such opinions may not be

ignored and, unless a treating source opinion is given controlling weight, all medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations. Id. §§ 404.1527(c), 416.927(c); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2019). A physician who has treated a patient frequently over an extended period (a treating source) is expected to have greater insight into the patient's medical condition, and his opinion is generally entitled to "particular weight." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). But, "the opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)). However, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. §§ 404.1527(c)(2),

416.927(c)(2); see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2019) ("Giving Controlling Weight to Treating Source Medical Opinions").

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citing SSR 96-2p). The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" Id. at 1300 (quoting SSR 96-2p). If the opinion is well-supported, the ALJ must confirm that the opinion is also consistent with other substantial evidence in the record. Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

If the treating source opinion is not given controlling weight, the inquiry does not end. Id. A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." Id. Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1301; 20 C.F.R. §§ 404.1527(c)(2-6), 416.927(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

As relevant in this case, an acceptable medical source is a licensed physician or a licensed psychologist. 20 C.F.R. §§ 404.1502(a), 416.902(a). The regulations require that the ALJ will also consider the opinions of medical sources who are not acceptable medical sources and the opinions of nonmedical sources using the regulatory factors enumerated above and will explain the weight given opinions from these sources. 20 C.F.R. §§ 404.1527(f), 416.927(f).

## B.    The ALJ's Findings Relevant Here

Regarding the severity of Plaintiff's mental impairments, the ALJ found, "The medical evidence fails to document the presence of objectively discernible medical signs reasonably consistent with a finding that the claimant has a moderate or greater limitation in any of the broad areas of mental functioning." (R. 14). He noted the results of examinations of Plaintiff's mental status in the treatment records:

> During exams with Ms. Russell, the claimant only demonstrated some intermittent, mild abnormalities, such as a depressed and/or anxious mood with a flat, blunted, or tearful affect. (Exhibits B4F/10, 12, 15, 18, 26; B8F/12, 15, 20, 26; B11F/2, 6, 24, 39, 42, 45, 48 [R. 492, 494, 497, 500, 508, 559, 562, 567, 573, 625, 629, 647, 662, 665, 668, 671]). A significant number of psychiatric evaluations administered by Ms. Russell yielded normal findings. (Exhibits B4F/7-8, 21, 24, 31; B8F/5, 8, 18, 24; B11F/9, 18, 21, 27, 30, 33, 36 [R. 489-90, 503, 506, 513, 552, 555, 565, 571, 632, 641, 644, 650, 653, 656, 659]). Routine psychiatric evaluations administered by other treatment providers yielded consistently normal findings. (Exhibit B2F/12, 25-29; B3F/14, 19, 38, 48, 54, 66, 71; B13F/3; B16F/8, 14, 20, 23, 36, 39, 46 [R. 389, 402-06, 421, 426, 445, 455, 461, 473, 478, 683, 731, 737, 743, 746, 759, 762, 769]). The claimant also attended a consultative examination with Stanley I. Mintz, Ph.D. on June 20, 2017. On exam, she appeared depressed and anxious. She appeared to function in the low average ranges of intelligence and working memory. Otherwise, the examination yielded findings within normal limitations. (Exhibit B6F [R. 538-40]).

Based upon the totality of the foregoing, the undersigned finds that the claimant has a mild limitation in understanding, remembering, or applying information; a mild limitation in interacting with others; a mild limitation in concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing oneself. Because the claimant's diagnosed mental impairments do not result in at least a moderate restriction in one of the four functional areas that comprise the "paragraph B" criteria, they are non-severe.

(R. 14-15).

The ALJ also found Plaintiff's allegations of symptoms are not consistent with the record evidence. Id. at 18, 19. He discussed Plaintiff's allegation of worsening of her physical impairments and her alleged limitations in activities of daily living:

The claimant has a bothersome constellation of physical impairments; however, the cumulative medical and non-medical evidence does not reasonably support a conclusion that she is as limited as alleged. Although she has presented with some chronic abnormalities, she has not presented with the sort of profound pain behavior, objectively appreciable fatigue, or motor, sensory, reflex, or strength deficits one would expect given the claimant's profound allegations. Rather, the claimant has experienced approximately the same degree of discomfort and limitation throughout the period beginning on her January 1, 2010 alleged onset date of disability. That is, since that time, the record does not document any persistent worsening in her ailments that would support a finding that her residual functional capacity has become more restrictive since the alleged onset date of disability. Despite her limiting impairments, she was able to work after the alleged onset date of disability: she earned $6,485.87 during 2010; $8,432.65 during 2011; $13,638.31 during 2012; $13,427.98 during 2014; $11,798.98 during 2015; $8,623.46 during 2016; and $54.84 during 2017. (Exhibit B12D). The claimant stopped working in January 2017 because she was laid off, not because of her impairments. (Exhibit B15F/3). During 2012, 2013, and 2014, the claimant was engaged in substantial gainful activity as a document preparer. Therefore, the preponderance of the evidence supports a conclusion that, although her impairments are limiting, they are not so limiting as would preclude performance of her past relevant work as a document preparer.

Furthermore, as is indicated in the above discussion of the "paragraph B" criteria and review of the claimant's medical records, the cumulative

evidence does not establish a reasonable basis for the extreme limitations the claimant alleged with regard to her activities of daily living. The weight of the evidence indicates that it is more likely than not that, to the extent the claimant's activities of daily living are limited, this is due primarily to non-disability factors, such as a lifestyle choice, rather than being the necessary consequence of her impairments.

(R. 19).

The ALJ explained his evaluation of the opinions of Dr. Isenberg, Dr.

Rosenshield, Dr. Mintz, and Ms. Russell:

As for the opinion evidence, significant weight is given to the opinions of nonexamining State [sic] agency consultants … Martin Isenberg, Ph.D.[] and Phillip Rosenshield, Ph.D. (Exhibits B2A, B3A, B6A, B7A). As State [sic] agency consultants, the foregoing sources are familiar with the disability determination process and the Regulations, including the terms of art and legal and medical standards set forth therein. Additionally, they each have specialized training and expertise that make them eminently qualified to render their respective opinions regarding the claimant's mental and physical ailments. Most significantly, they based their opinions upon comprehensive reviews of the record, including the claimant's longitudinal medical history and self-reported daily activities. Their opinions are consistent with the same. Indeed, their opinions are accompanied by detailed narratives that explain what evidence the consultants relied upon when rendering their conclusions. Although some evidence has been added to the record since the State [sic] agency consultants' reviews thereof, that evidence is cumulative of what was already present in the case record. That is, the additional evidence does not document an appreciable worsening in the claimant's condition since the State [sic] agency consultants' opinions were rendered. Based upon the totality of the foregoing, the undersigned gives significant weight to the nonexamining State [sic] agency … psychological consultants' opinions. To the extent the findings herein deviate from the conclusions of the State [sic] agency consultants, this is due to the undersigned giving some limited credence to the claimant's otherwise unsubstantiated allegations.

Partial weight is given to the opinion of consultative examiner Stanley I. Mintz, Ph.D. (Exhibit B6F). The opinion of Dr. Mintz was based upon and supported by the findings of a contemporaneous mental status examination, which are detailed above. However, his opinion was based upon a one-time examination of the claimant, and the broader case record does not

document repeated psychological testing that consistently reproduced the findings appreciated by Dr. Mintz.  When examined by Lisa Russell, NP-C, the claimant demonstrated only some intermittent psychiatric abnormalities, and the claimant's mental status was consistently normal when examined by all other treatment providers. (Exhibit B2F/12, 25-29; B3F/14, 19, 38, 48, 54, 66, 71; B13F/3; B16F/8, 14, 20, 23, 36, 39, 46 [R. 389, 402-06, 421, 426, 445, 455, 461, 473, 478, 683, 731, 737, 743, 746, 759, 762, 769]).  Accordingly, greater weight is given to the opinions of the nonexamining State agency psychological consultants, which are consistent with the weight of the medical evidence as a whole.

\*\*\*

No weight is given to the June 16, 2018 Mental Medical Source Statement of Lisa Russell, NP-C of Heartland Community Health Center.  Therein, she opined that the claimant has a variety of mental limitations, including a need to be absent from work two days per month and off-task 20 percent of the workday.  (Exhibit B9F).  Ms. Russell is not an acceptable medical source.  (20 CFR 404.1527(f), 416.927(f)).  Ms. Russell's Mental Medical Source Statement is not reasonably supported by her own treatment records.  During examinations with Ms. Russell, the claimant presented with intermittent rather than persistent psychiatric abnormalities and, when those abnormalities were present, they were not reasonably commensurate with the serious, work-preclusive limitations she assessed.  Rather, the claimant only demonstrated some intermittent, mild abnormalities, such as a depressed and/or anxious mood with a flat, blunted, or tearful affect.  (Exhibits B4F/10, 12, 15, 18, 26; B8F/12, 15, 20, 26; B11F/2, 6, 24, 39, 42, 45, 48 [R. 492, 494, 497, 500, 508, 559, 562, 567, 573, 625, 629, 647, 662, 665, 668, 671]).  A significant number of psychiatric evaluations administered by Ms. Russell yielded normal findings.  (Exhibits B4F/7-8, 21, 24, 31; B8F/5, 8, 18, 24; B11F/9, 18, 21, 27, 30, 33, 36 [R. 489-90, 503, 506, 513, 552, 555, 565, 571, 632, 641, 644, 650, 653, 656, 659]).  Additionally, in her opinion, Ms. Russell did not identify any clinical findings that support her conclusions or otherwise reconcile the discrepancies between her opinion and her treatment notes.  Furthermore, the undersigned notes that Ms. Russell's opinion is inconsistent with the weight of the medical evidence as a whole.  As is noted above, the claimant's mental status was consistently normal when she was examined by all other treatment providers. (Exhibit B2F/12, 25-29; B3F/14, 19, 38, 48, 54, 66, 71; B13F/3; B16F/8, 14, 20, 23, 36, 39, 46 [R. 389, 402-06, 421, 426, 445, 455, 461, 473, 478, 683, 731, 737, 743, 746, 759, 762, 769]).  Accordingly, the undersigned gives the Mental Medical Source Statement of Ms. Russell no weight.

(R. 20-21).

**C.**      **Analyses**

    *1.*      ***Step Two Evaluation of Mental Impairments***

Plaintiff acknowledges that in his step two evaluation the ALJ found no more than mild limitations in the four broad mental functional areas, and that might "be sufficient to explain the reasons for omitting mental limitations in the RFC as long as the step two analysis is supported by substantial evidence, but that is not the case here" because the ALJ did not weigh the medical opinions during his step two evaluation.  (Pl. Br. 13).  However, Plaintiff cites no authority for the proposition that an ALJ's evaluation of medical opinions must be located within his decision at the first point in that decision where it might affect some aspect of the decision, and the court is aware of none.  Such a position might support a logical or chronological progression of analysis, but there are many conceivable ways to organize an analysis in a decision of the SSA or of a court, and while the court might feel that a particular way is preferable, it is aware of no such legal or regulatory requirement in Social Security cases.  So long as the ALJ's path is discernible, follows the correct legal standard, and is supported by the record evidence, the court may not find error.

In his step two analysis the ALJ acknowledged that Plaintiff has medically determinable impairments of anxiety and depression, discussed and cited the record evidence of Plaintiff's mental impairments, and found no "objectively discernable medical signs reasonably consistent with a finding that the claimant has a moderate or greater limitation in any of the broad areas of mental functioning."  (R. 14-15).  Based on

16

that analysis he found Plaintiff has a mild limitation in each of the four broad areas of

mental functioning, and therefore, her mental impairments are not severe.  Id. at 15.  As

noted above, the regulations require finding mental impairments not severe in such a case

"unless the evidence otherwise indicates that there is more than a minimal limitation in

[the plaintiff's] ability to do basic work activities."  20 C.F.R. §§ 404.1520a(d)(1),

416.920a(d)(1).  Plaintiff argues the evidence shows more than a minimal limitation in

Plaintiff's mental abilities to perform basic mental work activities, but she points to no

evidence compelling that finding.  The court finds no error in the ALJ's step two finding.

### 2.     *Evaluation of Medical Opinions*

The ALJ accorded no weight to Ms. Russell's opinion because she is not an

acceptable medical source, her opinion was not reasonably supported by her treatment

notes, her Medical Source Statement did not identify clinical findings supporting her

conclusions and did not reconcile the discrepancies between her opinion and her

treatment notes, and her opinion is inconsistent with the weight of the medical evidence.

(R. 20-21).  Plaintiff argues these reasons are merely speculative inferences and do not

point to inconsistencies in the record for support.  The ALJ's reasons are not speculative

inferences, they are findings based on the record.  Because Ms. Russel is not a physician

or psychologist, the regulations require finding she is not an acceptable medical source.

20 C.F.R. §§ 404.1502(a)(1, 2), 416.902(a)(1, 2).  Had this case been filed after March

27, 2017, new regulations would have applied, and Ms. Russell would be an acceptable

medical source.  20 C.F.R. §§ 404.1502(a)(7), 416.902(a)(7).  However, it was not, they

do not, she is not, and the ALJ's analysis is correct.

Because she is not an acceptable medical source, Ms. Russell is not a treating source.  Therefore, even if the treating physician rule were the rigid hierarchy Plaintiff suggests—a treating source opinion must be given the greatest weight, followed in order by the opinions of examining sources, and then opinions of non-examining sources—(and it is not such a rigid hierarchy), Ms. Russell's opinion does not fall within that hierarchy.  Rather, because there is no treating source opinion regarding Plaintiff's mental impairments in this case, the ALJ was required to weigh all the opinions in accordance with the regulatory factors.  That is what he did.

As quoted above, the ALJ specifically cited numerous treatment notes from Ms. Russel which reveal intermittent, mild abnormalities, and numerous other treatment notes from Ms. Russell which revealed normal psychiatric findings.  (R. 21).  Plaintiff does not demonstrate error in those findings, and the court finds none.  Plaintiff's citations to allegedly contrary evidence fall within the ALJ's recognition that she has depression and anxiety with intermittent, mild abnormalities.   The ALJ also cited numerous treatment notes from other providers with consistently normal psychiatric exams which are inconsistent with Ms. Russell's opinion.  (R. 21).  Again, Plaintiff's citation to allegedly contrary treatment notes falls within the ALJ's recognition of depression and anxiety with intermittent, mild abnormalities (R. 627) but normal psychiatric exams otherwise.  (R. 619).

Plaintiff's argument that the ALJ misunderstands the nature of her impairments because the record reveals a waxing and waning of symptoms rests on her own post hoc rationalization of the record, for other than reports in the treatment notes of intermittent,

18

mild abnormalities, there is nothing in the record to support a waxing and waning argument.  Nowhere does the record reveal waxing and waning mental impairments, and no medical source, including Ms. Russell in her treatment notes or her opinion, suggests that this is such a case.  As Plaintiff cites, the court in Freemyer v. Sullivan, 723 F. Supp. 1417, 1420 (D. Kan. 1989) held that a claimant is not required to show that her impairment is continuously of a disabling severity level to be found disabled.  However, Plaintiff points to no evidence in this case compelling the finding that her mental impairments have ever been of a disabling severity level or have waxed and waned to and from such a level.

Plaintiff's attacks on the ALJ's weighing of the opinions of the state agency psychologists and of Dr. Mintz fair no better.  The ALJ partially discounted Dr. Mintz's opinion because it was based on a one-time examination and was inconsistent with the rest of the record evidence—either the intermittent abnormalities found by Ms. Russell or the consistently normal findings of the other providers.  (R. 20).  Similarly, he assessed greater weight (significant weight) to the state agency psychologists' opinions because they are familiar with the SSA's process and regulations, based their opinions on a review of the record, their opinions are consistent with the record, and they explained their reasons in a narrative.  Id.  Plaintiff does not deny any of these reasons given by the ALJ.  Rather, she argues Dr. Mintz did not review any medical records, and all these opinions were stale and did not account for subsequent records showing Plaintiff's allegedly worsening condition.  Plaintiff's argument Dr. Mintz did not review any medical records is simply without support in the record.  Apparently because Dr. Mintz

did not affirmatively state he had reviewed some medical records, Plaintiff asserts he did

not.  Moreover, whether Dr. Mintz reviewed any other medical records is irrelevant to his

opinion and largely irrelevant to the RFC assessed.  Dr. Mintz examined Plaintiff,

prepared a report of that examination and based his opinion upon that examination.

It is the ALJ's responsibility to review all the record evidence—medical and

nonmedical—and weigh the medical opinions and assess an RFC based upon his review.

Thus, it is the ALJ's responsibility in the first instance to determine if the opinions were

stale.  And, the ALJ did precisely that.  As quoted supra at 14, the ALJ recognized some

evidence was added to the record after the State agency consultants' review, but he found

the evidence was cumulative and did not show an appreciable worsening in Plaintiff's

condition.  (R. 20).  Although Plaintiff disagrees with this finding, she does not cite

record evidence compelling a different result.

Plaintiff's remaining arguments merely ask the court to reweigh the evidence and

substitute its judgment for that of the ALJ.  As noted above, it may not do so.  Plaintiff

must demonstrate the error in the ALJ's rationale or finding; the mere fact that there is

evidence which might support a contrary finding will not establish error in the ALJ's

determination.

> The possibility of drawing two inconsistent conclusions from the evidence
> does not prevent an administrative agency's findings from being supported
> by substantial evidence.  We may not displace the agency's choice between
> two fairly conflicting views, even though the court would justifiably have
> made a different choice had the matter been before it de novo.

Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v.

Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).  The court finds no error.

### 3. *The ALJ's Assessment of Mental Limitations in the RFC*

Plaintiff suggests the ALJ simply disregarded her mental limitations when assessing RFC, but she also acknowledges a "step two analysis may be sufficient to explain the reasons for omitting mental limitations in the RFC as long as the step two analysis is supported by substantial evidence." (Pl. Br. 13). As discussed above, the court finds no error in the ALJ's step two analysis or in his evaluation of the medical opinions regarding Plaintiff's mental limitations. Moreover, it is Plaintiff's burden to prove disability. However, she does not suggest mental limitations other than those opined by Ms. Russell, which the ALJ properly discounted. Nor does she point to record evidence compelling mental limitations greater than those consistent with basic mental work activities required by her unskilled past relevant work as a document preparer, or by the other unskilled work of which the ALJ found her capable.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated October 6, 2020, at Kansas City, Kansas.


s:/ *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**